IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES JONES,<br>　　　　Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 24-CV-5692 |
| DR HARRY, *et al.*,<br>　　　　Defendants. | :<br>:<br>: |

**MEMORANDUM**

**PEREZ, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**December 2, 2024**

James Jones, a prisoner in custody at SCI Phoenix ("SCIP"), filed this civil rights action naming Dr. Laurel Harry, the Commissioner of the Pennsylvania Department of Corrections ("DOC"), SCIP Superintendent J. Terra, DOC Chief Grievance Officer Keri Moore, and unknown members of the DOC Correctional Emergency Response Team ("CERT"). Each Defendant is named in their official and individual capacities. Jones also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Jones leave to proceed *in forma pauperis* and dismiss the Complaint on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.　　FACTUAL ALLEGATIONS**[1]

---

[1] Jones used the form complaint available to unrepresented litigants to file his claims and included an additional typewritten complaint. (ECF No. 1.) The Court considers the entire submission to constitute the Complaint, to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Jones alleges that on August 14, 2024, unidentified CERT officers arrived at his cell. (Compl. (ECF No. 1-1 at 4.) He was told to strip, his person was searched, and he was told to take his mattress down the stairs to be searched. (*Id*.) While he did so, he saw guards toss a large bag over the tier that contained his cell's contents. (*Id*.) He was put back in his cell, which was in disarray, and noticed that two "legal carry alls" were missing. (*Id*.) He immediately asked several guards to come to his cell, but they refused. He then called for a lieutenant and asked him to retrieve his legal documents out of the trash, but he also would not come to the cell, nor did he retrieve the documents. (*Id*.) A Unit Manager and other guards also would not help him. (*Id*. at 5.) Sometime around 12:25 a.m., a cleaning crew arrived, and he asked them to retrieve the material, but they picked it up and put it in the trash. (*Id*.)

One of the carry-alls contained legal materials consisting of notes of testimony, discovery, and research documents from Jones's criminal case and "related to, and about, a pending post-conviction review of his conviction" under the Pennsylvania Post Conviction Relief Act ("PCRA"). (*Id*. at 5-6.) He also intended to use the material for a presentation to the Philadelphia District Attorney's conviction integrity unit. (*Id*. at 6.) A second carry-all contained past and present grievance forms, research, and prior lawsuits. (*Id*.) Jones presumes that the material was destroyed by the CERT officials. (*Id*.)

Defendant Harry is named as a Defendant because, as head of the DOC, she has final authority regarding whether to deploy the CERT officials and for assuring fair and humane treatment of inmates. (*Id*.) He also asserts that she failed to put in place mechanisms for quickly resolving preventable disputes and deployed the CERT. (*Id*. at 7.) Superintendent Terra is named because, as Superintendent, he was responsible for instructing those who enter the facility about "the code of conduct required and he failed to train, supervise, instruct, notify, any

2

subordinate of the conduct required to assure that federal and state laws were not violated." (*Id*.) He also allegedly took no action to retrieve Jones's legal documents, although Jones does not state how Terra knew about the issue. (*Id*.) The unknown CERT officials allegedly acted maliciously to destroy Jones's legal materials "with the intent of depriving him a liberty [interest] and access to the court." (*Id*. at 8.) Keri Moore, as Chief Grievance Officer, acted with malice and "colluded to intentionally cover up a crime of theft," presumably in the manner in which she handled Jones's grievance.[2] (*Id*. at 9.) Finally, other unknown Defendants participated in the assigning, training, development, briefings, preparation, and cleanup of the incident, and thus acquiesced in or deliberately conspired to violate his rights. (*Id*. at 13.)

Jones asserts claim under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments based on the destruction of his legal materials. (Compl.(ECF No. 1) at 3.) He also alleges that each Defendant acted negligently. (*Id*. at 4.) He seeks injunctive relief to force the Defendants to return his property or reproduce the documents that were destroyed. (*Id*. (ECF No. 1-1) at 14.) He also seeks an injunction to prohibit future retaliation, harassment, assault, or transfer to a different facility, and money damages. (*Id*. at 14-15.)

A review of public records indicates that Jones was convicted in the Montgomery County Court of Common Pleas on charges of retail theft on August 1, 2018 and sentenced to a maximum term of 23 months. *Commonwealth v. Jones*, CP-46-CR-0002837-2018 (C.P. Montgomery). He was also convicted in Philadelphia County on July 22, 2022 of failing to

---

[2] Attached to the Complaint are numerous pages of grievance forms, requests to staff, property receipts, decisions from each level of the grievance process, and Jones's grievance appeal requests. (Compl. (ECF No. 1-1) at 17-28.) Defendant Moore issued a denial of Jones's grievance on October 10, 2024 for the reason that he failed to properly appeal his grievance to the Facility Manager. (*Id*. at 27.) Previously, the Facility Grievance Coordinator had denied his grievance because Jones failed to provide required documentation. (*Id*. at 18.)

register as a sex offender (failure to verify address and be photographed), and sentenced to a maximum of 18 months. *Commonwealth v. Jones*, CP-51-CR-0008212-2021 (C.P. Philadelphia). Neither state court docket reflects that Jones had a pending direct appeal or PCRA petition at the time of the incident he describes in the Complaint. It is unclear where a conviction for a sex crime that underlies the failure to register offense originated.

## II.     STANDARD OF REVIEW

The Court grants Jones leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Jones is proceeding *pro se*, the

---

[3] Because Jones is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Also, when allowing a plaintiff to proceed *in forma pauperis* the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### III. DISCUSSION

Jones asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

#### A. Official Capacity Claims for Money Damages

Jones has named each Defendant, all of whom are employees of the Commonwealth of Pennsylvania, in his or her official capacity and seeks money damages as part of his relief. The

5

Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Eleventh Amendment immunity also precludes negligence claims. *See Brooks v. Beard*, 167 F. App'x 923, 926 (3d Cir. 2006) (*per curiam*) (noting, with regard to inmate's negligence claims, that "the state has expressly retained its Eleventh Amendment immunity for purposes of federal lawsuits."). Accordingly, all official capacity claims seeking money damages are dismissed with prejudice.

      **B.**      **Individual Capacity Claims**

            **1.**      **Claims Based on Grievances**

Jones asserts claims against Defendant Moore and perhaps others concerning the manner in which his grievances were handled. These claims are also not plausible and will be dismissed.

Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Jones predicated on failures of the grievance process or improper handling of or

response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Because the allegations against Defendant Moore concern only her involvement with grievances, she will be terminated as a defendant.

### 2. Claims Against Supervisors

Jones names Dr. Harry, the Commissioner of the DOC, and SCIP Superintendent J. Terra as Defendants, because they hold positions of supervisory authority. Harry allegedly has final authority regarding whether to deploy CERT officials and for assuring fair and humane treatment of inmates, and failed to put in place mechanisms for quickly resolving preventable disputes. (Compl. (ECF No. 1-1 at 6, 7.) Superintendent Terra is named because, as Superintendent, he was responsible for instructing those who enter the facility about "the code of conduct required and he failed to train, supervise, instruct, notify, any subordinate of the conduct required to assure that federal and state laws were not violated." (*Id*. at 7.) He also allegedly took no action to retrieve Jones's legal documents. (*Id*.)

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*)

("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Thus, the mere fact that Harry and Terra were "in charge" of the DOC and SCIP respectively does not state a plausible claim against them.

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Since there is no allegation that either Defendant was personally responsible for the destruction of Jones's legal materials,[4] any liability against them

---

[4] Jones asserts that Terra took no action to retrieve the legal documents, but he does not allege that Terra was present or even aware of the cell search, that the materials had been confiscated, or that he knew that Jones was unable to retrieve them at the time of the incident.

must be premised, if at all, on facts alleging deliberate indifference to the consequences of a policy they established that caused constitutional harm.

This first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and [allege] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

---

The allegation that Terra took no action is thus, too undeveloped and generalized to be plausible as a participation, direction, or acquiescence claim.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Jones alleges only that Harry has final authority regarding whether to deploy CERT officials and for assuring fair and humane treatment of inmates, and failed to put in place mechanisms for quickly resolving preventable disputes. (Compl. (ECF No. 1-1 at 6, 7.) Superintendent Terra is named because, as Superintendent, he was responsible for instructing those who enter the facility about "the code of conduct required and he failed to train, supervise, instruct, notify, any subordinate of the conduct required to assure that federal and state laws were not violated." (*Id*. at 7.) These allegations are insufficient to state a plausible claim that either Harry or Terra, acting with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused Jones to suffer a constitutional harm. To the extent that Jones asserts a failure-to-train claim based on an act of a subordinate official, because the Court ultimately determines that there are no plausible underlying claims, Harry and Terra may not be held liable under this type of theory either. *Allen*, 804 F. App'x at 127.

### 3. Fourth Amendment Claims

Jones cites the Fourth Amendment, applicable to the states via the Fourteenth Amendment, and mentions that both he and his cell were searched. The claim about his cell being searched is not plausible. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001)

("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").

To the extent the claim involves Jones being strip searched, the analysis is more complex. The Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has held that inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances.[5] *See Bell v. Wolfish*, 441 U.S. 520 (1979). Following *Bell*, in *Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit held that the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." The *Parkell* court emphasized that, while the Fourth Amendment "applies to bodily searches in prison," the "contours of prisoners' Fourth Amendment rights" are "very narrow." *Id.* at 326. Application of the Fourth Amendment in this context requires a balancing of interests. *See id.*

Although strip searches constitute a "significant intrusion on an individual's privacy," *United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where prison officials conduct such searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See*

---

[5] A claim concerning a strip search is also cognizable under the Eighth Amendment where it is alleged that the strip search was either physically or sexually abusive. *See, e.g., Farmer v. Plumeri*, No. 22-957, 2023 WL 35869, at *2-3 (D. N J. Jan, 4, 2023). Jones does not allege the search was sexually or physically abusive, accordingly, the Court analyses the claim under the Fourth Amendment. The Eighth Amendment claim will be dismissed.

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010), *aff'd*, 566 U.S. 318 (2012). When determining the reasonableness of a strip search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 558-59 (holding that the prison's policy of strip and visual body cavity searches, requiring inmates to stand naked, lift their genitals and bend over and spread their buttocks for visual inspection, did not violate an inmate's Fourth Amendment rights); *see also Brown v. Blaine*, 185 F. App'x 166, 169-70 (3d Cir. 2006) (finding no constitutional violation where inmate was required to lift his genitals, spread his buttocks, and then place his hands on his head and sweep his mouth with his fingers).

The Supreme Court also held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something. *Florence*, 566 U.S. at 328 (explaining that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities"); *see also Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) (holding that it is constitutional to conduct a full strip search of an inmate in general population, "regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*). Moreover, there is no violation of a prisoner's constitutional rights by conducting the strip search, including a visual body cavity search, in front of other inmates. *See Illes v. Beard*, No. 12-964, 2013 WL 2285565, at *5 (M.D. Pa. May 23, 2013); *Eby v. Karnes*, No. 19-2069, 2020

WL 1550634 (M.D. Pa. Apr. 1, 2020) (finding no violation where the search was performed in front of other inmates and included a visual cavity search).

"The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. Inmate search policies are constitutional if they "strike a reasonable balance between inmate privacy and the needs of the institutions." *Florence*, 566 U.S. at 339. Under *Bell*, a court must give considerable weight to the "place in which [the search is conducted]" – prisons being "places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often violent, conduct," *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and considerable deference to "the justification for initiating it." *Bell*, 441 U.S. at 559.

As noted, for example, "correctional officers must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence*, 566 U.S. at 328. The Supreme Court has also held that a full strip search of an individual detained in the general prison population is constitutionally permissible, whatever may be the basis for reasonable suspicion that the individual may be concealing something. *Id.*; *see also Small*, 528 F. App'x at 207 (holding that it is constitutional to conduct a full strip search of an inmate in general population, "regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*). And courts have recognized the reasonableness and legality of "strip searches for the security and good order of the facility prior to an inmate's transport outside the secure perimeter of the prison." *Robins v. CO. True*, 2015 WL 1219278, at *11 (M.D. Pa. Mar. 13, 2015) (citing DC-ADM

203(G)(2)(a)(9). In short, a regulation "impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326 (quotation marks omitted). This is because "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." *Id.* at 328 (quotation marks omitted).

Jones asserts he was strip searched as part of a search of all of his physical surroundings. Although not entirely clear, he appears to assert he was targeted for the search since the CERT officials came to his cell specifically and he does not mention that any other inmate areas were searched. (Compl. (ECF No. 1-1 at 4).). But even "[r]outine, suspicionless inmate search policies may sweep quite broadly and still be reasonable." *Parkell*, 833 F.3d at 329. Given Jones's failure to allege specific facts suggesting the search was conducted for an illegitimate purpose, and that the residual Fourth Amendment right to be free from unreasonable searches in a prison context is "very narrow," *id.* at 326, the Court concludes that his claim is not plausible. *Accord*, *Washington v. S. Woods State Prison*, No. 23-23179, 2024 WL 2180289, at *3 (D.N.J. May 14, 2024) (holding that Fourth Amendment strip search claim was not plausible where prisoner did not "raise allegations that may suggest that the manner in which the searches were carried out were unreasonable").

### 4. Claims Based on Destruction of Legal Materials

Jones asserts First and Sixth Amendment claims based on the destruction of his legal materials. Because Jones is a convicted prisoner, his claim is properly analyzed under the First and Fourteenth Amendment as a denial of access to the courts claim rather than a Sixth Amendment denial of counsel claim. *See Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) ("Under the Sixth Amendment, a pretrial

14

detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him."). The First Amendment claim is not plausible.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.*; *Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions"); *see also Lewis v. Casey*, 518 U.S. 343, 355 (1996) (stating that the inability to litigate claims other than an attack on a sentence or conditions of confinements "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis*, 518 U.S. at 350). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he

15

underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*). Because Jones does not identify a nonfrivolous and arguable claim that has been lost due to the destruction of his legal materials, his claim is not plausible.

Jones's allegation that he was collecting evidence to provide to the Philadelphia District Attorney's Conviction Review Unit also does not assert a plausible First Amendment claim. While the constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances, *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983), there appears to be no specific constitutional right to seek discretionary prosecutorial reexamination of charging decisions. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that prosecutors are granted broad discretion in charging decisions so long as the decision is not based on an unjustifiable standard such as race, religion, or other arbitrary classification); *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications."). Therefore, this portion of Jones's First Amendment claim will also be dismissed with prejudice.

### 5. State Law Claims

Jones also alleges negligence claims. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28

U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Jones does not allege the citizenship of the parties. Rather, he provides only the address of SCIP for himself and the same address as well as the address of the DOC's central office in Mechanicsburg, Pennsylvania for the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Jones has not sufficiently alleged

that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the reasons stated, the Court will dismiss Jones's Complaint. All state law claims are dismissed without prejudice for lack of subject matter jurisdiction. Regarding his federal law claims, all official capacity claims for money damages, all claims based on the handling of grievances, all Fourth Amendment claims involving a cell search, all claims for violation of the Sixth Amendment, all Eighth Amendment claims, and any First Amendment claim based on the destruction of legal materials related to Jones's attempt to use them before the Philadelphia District Attorney's Conviction Review Unit are dismissed with prejudice. The balance of Jones's federal law claims are dismissed without prejudice. Jones will be provided an opportunity to file an amended complaint if he is capable of curing the defects the Court has identified in the claims dismissed without prejudice. An order providing additional instructions on amendment, will be entered.

**BY THE COURT:**

**HON. MIA R. PEREZ**